UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TOMMIE L. CARTER,

                Plaintiff,

v.                                                Case No. 23-cv-1544-pp

BRENT JOHNSON,

                Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTIONS FOR ANSWER, FOR EMERGENCY SCREENING, FOR RESPONSE AND FOR IMMEDIATE SCREENING ORDER (DKT. NOS. 8, 9, 11, 12) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Tommie L. Carter, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant failed to prevent him from harming himself. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, resolves the plaintiff's other pending motions, dkt. nos. 8, 9, 11 and 12, and screens his complaint, dkt. no. 1.

I.     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On December 1, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $183.71. Dkt. No. 7. The court received that fee on December 12, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names Waupun correctional officer Brent Johnson as the only defendant. Dkt. No. 1 at ¶3. The plaintiff alleges that around 7:00 p.m. on August 5, 2023, he informed Johnson that he was suicidal and depressed because Waupun had been on lockdown. Id. at ¶5. The plaintiff says he told Johnson that the lockdown had made him "increasingly dangerous to him and others." Id. The plaintiff asked Johnson to place him "in observation to ensure

his safety" under Department of Corrections rules. Id. at ¶6. Johnson allegedly responded, "you are trying to manipulate staff for your own benefit rather than exhibiting symptoms of mental illness." Id. at ¶7. Johnson then walked away to continue delivering medication to other incarcerated persons. Id. at ¶8.

After Johnson left, the plaintiff "used a razor to cut the artery in his left arm, his right leg, then used the razor to lacerate the right side of his neck." Id. at ¶9. He says that he "then overdosed on 150 Acetaminophen pills." Id. Other incarcerated persons "began yelling 'medical emergency in Tommie Carter cell.'" Id. at ¶10. Several correctional officers, including Johnson, came to the plaintiff's cell, entered it and found the plaintiff "lying on the floor face down with a lot of blood on the floor." Id. at ¶¶11–12. The officers placed the plaintiff in handcuffs and ankle restraints. Id. at ¶13. Nurse Vick (not a defendant) came to the cell, assessed the plaintiff's vital signs and determined that he "needed to go to the hospital via ambulance." Id. at ¶14. Captain Sankey (not a defendant) told a correctional officer (not Johnson) to get "the soft stretcher so they could transport" the plaintiff to the front of the cell hall. Id. at ¶15. The officer retrieved the stretcher, and Sankey and other officers helped the plaintiff onto the stretcher. Id. at ¶¶16–18.

Prison staff carried the plaintiff to the front cell hall and then loaded him onto an EMT's gurney. Id. at ¶19. Medical staff took the plaintiff to Waupun Memorial Hospital, where a physician and nursing staff performed emergency surgery to stop the bleeding. Id. at ¶20. The plaintiff says that medical staff used "100 running stitches" to close the wound on his left forearm and "10

running stitches" for the wound on his neck. Id. at ¶21. Staff closed the wound on his right leg with "glue." Id. The physician contacted poison control about the plaintiff's Acetaminophen overdose and ordered labs "to check the [T]ylenol for toxicity." Id. at ¶22.

At around 3:30 a.m. the next day, August 6, 2023, the physician at the hospital reevaluated the plaintiff and told him his Tylenol levels "were not toxic and went down, and that it was safe to discharge him." Id. at ¶23. Back at Waupun, staff placed the plaintiff in a strip cage, performed a strip search, then handcuffed the plaintiff to the strip-cage door. Id. at ¶24. He says that Captain Sankey and Nurse Vick "expressed their belief that further manipulation of the wounds would be harmful, and would 'definitely' result in [the plaintiff] going back to the hospital, and could be lethal." Id. at ¶25. Dr. Roca (not a defendant) told Sankey and Vick to place the plaintiff into "clinical grip bed restraints for 12 hours." Id. at ¶26.

The plaintiff asserts that, "on information and belief," Johnson should have contacted his unit sergeant and shift supervisor when the plaintiff told him "that [the plaintiff] was going to engage in suicidal behaviors." Id. at ¶27. He says that Waupun staff should have placed him "directly into observation per his 'behavior management plan.'" Id. He says that Johnson "dismissed [his] cry for help as manipulation," which resulted in the plaintiff's attempted suicide. Id. at ¶28. The plaintiff says he has been diagnosed with anti-social personality disorder, depression and "adjustment disorder with disturbance of mood." Id. at ¶29. He says he has been prescribed "antidepressants agents." Id.

5

The plaintiff seeks to proceed against Johnson in his individual capacity on a claim under the Eighth Amendment for failing to protect the plaintiff from harming himself. Id. at ¶32. He asserts that Johnson's failure to abide by the plaintiff's behavioral health plan "constituted deliberate indifference to [the plaintiff's] health and safety in violation of the Eighth Amendment." Id. at ¶33. The plaintiff seeks declaratory judgment that Johnson violated his rights and $90,000 total in compensatory damages. Id. at ¶¶34–38.

The plaintiff attached several exhibits to his complaint. Dkt. No. 1-1. He attached an incident report about his alleged suicide attempt, id. at 1–3, records from his time in psychological observation on August 6 and 7, 2023, id. at 4–5, and his detailed behavior management plan from November 4, 2022, id. at 6–7. He also attached copies of the complaint report from his institutional complaint about the incident, which he says he fully exhausted before bringing this complaint. Id. at 8–13; Dkt. No. 1 at ¶31.

C.   Analysis

The court analyzes the plaintiff's allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from an incarcerated person's act or threat of self-harm "up to and including suicide." Miranda v. County of Lake, 900 F.3d 335,

6
Case 2:23-cv-01544-PP   Filed 01/08/24   Page 6 of 13   Document 13

349 (7th Cir. 2018). The subjective component requires the plaintiff to demonstrate that the prison official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. The plaintiff must show the official's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

The plaintiff alleges that he told Officer Johnson that he was suicidal, depressed and dangerous to himself and others. He asked to be placed in observation to keep him safe. The plaintiff says that Johnson acknowledged his concern but told him that he believed the plaintiff was trying to manipulate staff for his own benefit and was not showing genuine symptoms of mental illness. Johnson walked away, and the plaintiff engaged in self-harm, for which he had to be hospitalized. The court finds that at the screening stage, these allegations satisfy the objective component of an Eighth Amendment claim. See Miranda, 900 F.3d at 349.

It is less clear whether the allegations satisfy the subjective component. The plaintiff has not alleged that Johnson ignored him or disregarded his concern. He alleges only that Johnson didn't believe that the plaintiff's threat to harm himself was genuine. The Seventh Circuit has observed that prison "guards know that prisoners may exaggerate or make things up to get attention or benefits." Horshaw v. Casper, 910 F.3d 1027, 1029 (7th Cir. 2018). For that reason, "[a] guard who reasonably disbelieves a prisoner's assertion is not liable just because it turns out to have been true." Id. (citing Olson v. Morgan,

750 F.3d 708, 713 (7th Cir. 2014); and Riccardo v. Rausch, 375 F.3d 521, 526–28 (7th Cir. 2004)). A prison official who disbelieves an incarcerated person's threat, on which the incarcerated person then follows through, "at most . . . might have been negligent." Olson, 750 F.3d at 713. But negligence, even gross negligence, is not enough to state an Eighth Amendment violation. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The documents the plaintiff attached to his complaint reflect that he has an "extensive history of engaging in significant self-harm behavior." Dkt. No. 1-1 at 4–5. That "significant history of life threatening self-harm" is at least part of the reason the plaintiff was placed on a behavior management plan. Id. at 6. But the records also reflect that the plaintiff has "a history of making vague suggestions or overt threats to engage in self-harm, then recanting or denying making those statements"; "has a history of seeking contact with PSU [Psychological Services Unit] or other staff members by making statements about suicide or self-harm, but then denying or recanting those statements"; and is known for "staff splitting, for example saying one thing to one department and manipulating other staff members to advocate against a placement in observation status." Id. The doctors who formulated his behavioral health plan noted that because of the plaintiff's "history of significant self-harm, even covert, vague threats of suicide and/or self-harm should be taken very seriously." Id.

All this suggests that Officer Johnson faced a difficult decision. The plaintiff—an incarcerated person with known suicidal actions and tendencies—

told Johnson that the plaintiff was feeling suicidal and needed to be placed on observation. But the plaintiff appears to have a history of telling different stories to manipulate staff for his benefit. The complaint alleges that Johnson told the plaintiff that he believed the plaintiff was doing the latter—attempting to manipulate Johnson, rather than expressing a sincere threat of suicide. The complaint does not allege whether Johnson is familiar with the plaintiff's varied threats, but his alleged statement suggests that he is.

Perhaps of most concern is the plaintiff's allegation that Johnson walked away from the plaintiff's cell, without contacting a unit sergeant or a shift supervisor, who might have been better equipped to handle the plaintiff's threat and decide on a proper course of action. If true, these allegations suggest that Johnson could have done more without granting the plaintiff's request to be placed on observation status. That he did not weighs in favor of the court finding that the plaintiff has stated sufficient facts to support a claim that Johnson was indifferent to the plaintiff's threat, even if Johnson reasonably believed (based on the plaintiff's history) that it was insincere.

It is a close call whether the plaintiff's allegations satisfy the subjective component of an Eighth Amendment claim. But the court must construe the allegations in the plaintiff's favor, especially because he is representing himself. The court concludes that the complaint states a claim against Johnson for not taking additional action to prevent the plaintiff's self-harm. The court will allow the plaintiff to proceed on this claim against Johnson in his individual capacity.

The plaintiff seeks damages and a declaratory judgment that Johnson violated his rights. But "under § 1983, declaratory or injunctive relief is only proper if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The complaint alleges that the plaintiff harmed himself on August 5, 2023 and that he was treated and returned to the prison a day later. There is no ongoing harm, so the plaintiff may not seek declaratory relief. He may proceed only on his request for damages.

### III.    Plaintiff's Other Motions (Dkt. Nos. 8, 9, 11 and 12)

The plaintiff filed two motions for relief before the court received the initial partial filing fee, and another two motions in the week after the court received the initial partial filing fee. These include a "motion for an answer" to the plaintiff's inquiry whether the court received his trust account statement and his "signed form regarding magistrate judge jurisdiction," dkt. no. 8; a motion "for an emergency screening," in which the plaintiff says that prison staff have attempted "to impede [his] litigation in this case," dkt. no. 9; a request for a response from the court about whether it received his $183.71 initial partial filing fee, dkt. no. 11; and a second "motion for an immediate screening order," in which the plaintiff reiterates his concerns that prison staff are destroying evidence, dkt. no. 12.

The court will deny these motions as moot. The court does not typically send notice to parties (even incarcerated litigants) that it has received documents from them. But the court noted in the previous order assessing the

plaintiff's initial partial filing fee that it had received his trust account statement. Dkt. No. 7 at 2. The court noted in this order that it received his initial partial filing fee payment on December 12, 2023. This order screens the plaintiff's complaint, so his requests for an emergency or immediate screening are unnecessary.

The plaintiff has thirty-four previous cases in this district, so he is aware of the time it takes to litigate in federal court. The court advises the plaintiff to be patient awaiting court orders or responses. The court understands the plaintiff's concern about his case and the evidence he believes he needs to prove his allegations, but if he continues to file motions asking whether the court received his documents or asking the court to decide his case faster, those may delay the court's handling of his case because the court also will have to spend time deciding his extra motions.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motions for an answer, for an emergency screening, for a response and for an immediate screening order. Dkt. Nos. 8, 9, 11, 12.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Brent Johnson at Waupun Correctional Institution. Under the

informal service agreement, the court **ORDERS** the defendant to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$166.29** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 8th day of January, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**